In re CRANE AUTOMOTIVE, INC.
A/K/A Echard and Crane,
Inc., Debtor.

CRANE AUTOMOTIVE, INC., Plaintiff,

v.

FIRST SENECA BANK, Defendant.

**Bankruptcy No. 86–2528 PGH.
Adv. No. 87–349.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 24, 1989.

See also, Bkrtcy., 88 B.R. 81.

Gary W. Short, Pittsburgh, Pa., for debtor.

Reed J. Davis, Pittsburgh, Pa., for defendant.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

This opinion constitutes this Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052. This Court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania dated October 16, 1984 entered pursuant to 28 U.S.C. § 157. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K).

## SUMMARY

Crane Automotive, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 30, 1986. Prior to the commencement of bankruptcy proceedings, First Seneca Bank (the "Bank") acquired liens against the debtor's real estate. The Bank's liens are founded upon: (1) a confession of judgment on May 11, 1982 under an installment loan note executed by the parties in 1982; and (2) a separate confession of judgment entered

June 16, 1986 on a bond. The bond was executed on April 29, 1983 and accompanied a mortgage on the debtor's property located in Imperial, Pennsylvania.

This two-count adversary proceeding was commenced on September 18, 1987. In the first count of the complaint, the debtor seeks to avoid the lien arising from the judgment confessed on May 11, 1982 on the April 30, 1982 installment loan note. In the second count of the complaint, the debtor seeks a determination of the amount of the secured claim of the Bank based upon the judgment entered on June 16, 1986 on the April 29, 1983 bond; the debtor seeks to have the rate of interest reduced from the contractual rate of 16% per annum to the legal rate of 6% per annum commencing with the entry date of the judgment.

### COUNT I.

The facts surrounding the first count are as follows. On April 30, 1982, the debtor borrowed $52,965.46 from the Bank pursuant to an installment loan note and security agreement ("Note"). The pertinent provisions include:

> [Debtor] ... promise[s] to pay to the order of: ... [Bank] ... in 84 consecutive equal monthly installments of $1,088.94 each, beginning June 10, 1982 and continuing on the same date of each successive month ...
>
> (SECURITY AGREEMENT) ... [T]his Note authorizes you to cause judgment to be entered by confession against [debtor] for the sums payable under this Note, plus costs of suit and reasonable attorney fees. Entry of such judgment in the appropriate public office creates a lien upon all of my real property in the county or counties where judgment is entered. Upon the occurrence of any Event of Default ... you may issue appropriate writs of execution ... and cause all my real and personal property ... and the proceeds thereof, to be applied in satisfaction of the sums remaining unpaid on this Note.
>
> \* \* \* \* \* \*
>
> WARRANT OF ATTORNEY TO CONFESS JUDGMENT: Each Borrower ... authorizes and empowers ... any attorney ... to appear for each Borrower ... and confess judgment as often as may be necessary in favor of Bank, as of any term, with or without declaration filed, for such sums as are or may become due on this Note ...

On May 11, 1982, the Bank confessed judgment against the debtor under the Note for $107,021.02 and caused it to be indexed, thereby creating a lien against the debtor's real property located in McKees Rocks and Imperial, Pennsylvania.

■ The debtor's primary contention is that, pursuant to the authority granted in the warrant of attorney, the Bank was entitled to confess judgment only as to the amounts past due, or due and payable under the Note. The debtor points out that no monies were due and payable to the Bank when judgment was confessed on May 11, 1982 because the Note was an installment obligation which required the first installment to be paid on June 10, 1982.

A warrant to confess judgment ("Warrant") may be either conditional or unconditional. *See,* Robert C. Sprenkle, Jr., *Confession of Judgment in Pennsylvania,* § 5.1.3 (1982). A warrant is conditional if it contains some restriction, limitation or condition on the time during which it may be exercised. *Id.* at § 5.2.1. *See also Integrity Title Ins., Trust & Safe Deposit Co. of Rau,* 153 Pa. 488, 26 A. 220 (1893). Here, the debtor asserts that the phrase "for such sums as are or may become due on this Note" created a conditional warrant. The debtor argues that the term "due" is ambiguous and should therefor be construed in its favor by interpreting it to mean a sum for which the time for payment has passed and the sum remains unpaid; in other words, there must be a present obligation to pay before a judgment may be confessed. The debtor wishes this Court to avoid the lien arising from the judgment because the time for payment had not passed and therefore the judgment was entered without authority.

The Bank, on the other hand, contends that the language of the warrant created unconditional authority in the Bank to confess the May 11, 1982 judgment. We believe this to be the better reasoning and therefore hold that the warrant grants unconditional authority to confess judgment under the authority of *Volkenand v. Drum*, 143 Pa. 525, 22 A. 881 (1891); *Integrity Trust & Savings Deposit Co. v. Rau*, 153 Pa. 488, 26 A. 220 (1893); and *Rose v. Cohen*, 193 Pa.Super. 454, 165 A.2d 264 (1960).

The debtor has not cited a case which directly supports its proposition or leads us to believe that the warrant is ambiguous. The debtor's reliance on the case of *Bob Collins, Inc. v. S.M. Hexter Co.*, 7 Pa.D. & C.3d 683 (1977) is not persuasive. In *Bob Collins*, the judgment was stricken because the warrant did not authorize judgment to include the debtor's obligation to pay future rent under a lease. *Id.* However, a lease instrument containing a warrant is significantly different than an installment note in that both property and contractual rights are implicated and affect the interpretation and application of the term "due." *See Park–Main Co. of Penna., Inc. v. Fayette Nat'l Bank & Trust Co.*, 21 Fay.L.J. 160 (1958), *aff'd* 397 Pa. 75, 152 A.2d 714 (1959).

In the absence of a specific case directly construing the phrase "for such sums as are or may become due" as granting only conditional authority, we find that such language authorizes the entry of the judgment here in question. Neither the judgment nor the lien thereof will be avoided.

(Post-judgment interest will, however, be adjusted to 6% per annum as explained below).

### COUNT II.

The debtor also seeks a determination of the amount of the Bank's secured claim arising from the June 16, 1986 judgment entered on the bond. At issue is the rate of interest and the amount of attorney fees to which the Bank is entitled.

On April 29, 1983, the debtor borrowed $95,000 from the Bank pursuant to an installment bond. The penal sum of the bond was $190,000. To secure the bond, the debtor granted the Bank an accompanying mortgage upon the debtor's property located in Imperial, Pennsylvania. Subsequently, the Bank confessed judgment under the bond on June 16, 1986 for the amount of $108,301.42. This amount represented a principal sum of $90,431.88, interest through June 10, 1986 of $8,023.96, and attorney fees of $9,845.58.

The debtor alleges that as of June 16, 1986, additional interest of $198.21 had accrued under the bond bringing the total amount of accrued interest as of the date judgment was confessed to $8,222.17. However, the debtor asserts that under Pennsylvania law, confession of judgment pursuant to the bond converted the contractual rate of interest to the legal rate of interest. Thus, the debtor contends that subsequent to June 16, 1986, the remaining balance accrued interest at the legal rate of 6% and not at the contract rate of 16%.

A necessary starting point is the language of the instrument upon which the claim is based. After reciting the penal sum of $190,000 the bond provides in part:

And ... [the debtor] ... does hereby empower any Attorney ... to appear for them, and after one or more declarations filed, confess judgment or judgments against them in favor of ... [the bank] ... as of any term for the above penalty, together with costs of suit, attorney's commission of 10 percent, for collection ...

Now the Condition of the above Obligation is such, [t]hat if ... [the debtor] ... shall and do well and truly pay, or cause to be paid unto ... [the bank] ... the just sum of ... $95,000.00 ... in the following manner: ... [$1,395.85 per month for fifteen years] ... with interest thereon from the date hereof, at sixteen per cent, per annum, payable monthly, until the whole of said principal debt or sum be fully paid ... then this obligation to be void, otherwise it is to remain in full force and virtue; and in case default be made in payment of said principal debt or sum, or any installment of inter-

est or premium of insurance as aforesaid, ... or any part thereof when due and payable, respectively, by the terms of this obligation, or by law, for the space of thirty days, as aforesaid, the whole of said principal debt or sum and interest then unpaid, shall thereupon at the option of ... [the bank], become due and payable, and execution may issue forthwith for the collection of the same, together with all fees, costs and expenses of collecting the same, including an attorney's commission of ten percent.

 In Pennsylvania, the Bank is entitled to the contractual rate of interest until the obligation is fully paid *so long as* the Bank's claim is based upon the contractual obligation. *American Bankers Finance Co. v. Majeski,* 22 Del.Co.Rep. 433 (1932). *See also, Miller v. Reading,* 369 Pa. 471, 87 A.2d 223 (1952); *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 473 A.2d 584 (1984); *and Parkhurst v. Baumgarten,* 81 D. & C. 312 (1952). Once the Bank reduced its claim to judgment, however, the legal rate of interest applied. *Majeski,* 22 Del.Co.Rep. 433 (1932). *See also, Dunbar v. Dunbar,* 9 Pa.D. & C.3d 214 (1978). Also, 42 Pa.C.S.A. § 8101 provides for "interest at the lawful rate ... from the date of the judgment." It is arguable that the Bank could have protected its right to receive the contractual rate of interest after entry of the judgment by including an express provision to such effect in the Warrant. *See In re Petrof,* 62 B.R. 696 (Bankr.W.D.Pa.1986). Here, however, the language contained in the documents do not manifest a clear intention to continue the contractual rate of interest after entry of the judgment. 41 P.S. § 202 provides that the "legal rate of interest" is six per cent per annum. Therefore, after entry of the judgment on June 16, 1986, the Bank is only entitled to the six per cent 6% legal rate of interest.

As an alternative, the debtor also asserts that the Bank accelerated the indebtedness under the bond thereby making the obligation mature. Under this analysis, the debtor argues that the phrase in the bond which provides for interest at 16 percent until the obligation matures has been satisfied by the entry of the judgment thereby converting the interest to the legal rate of 6%. *See Miller v. Reading,* 369 Pa. 471, 87 A.2d 223 (1952); *Wright v. Hanna,* 210 Pa. 349, 59 A. 1097 (1904). In light of our holding, we need not address this argument and therefor express no opinion on the merits.

 Finally, two corollary matters must be addressed to determine the allowed amount of the Bank's secured claim under 11 U.S.C. § 506. It is undisputed that the Bank is oversecured; therefore the Bank's claim to interest and attorney fees is governed by § 506(b) which allows:

... interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose. 11 U.S.C. § 506(b).

This language has been subject to various interpretations. The cause for the various interpretations has been aptly described as the "Case of the Capricious Comma," *In re Dan–Ver Enterprises, Inc.,* 67 B.R. 951 (W.D.Pa.1986), and has rested primarily on the nature of the underlying obligation. Until recently, *Dan–Ver Enterprises* was the controlling law in this district wherein the District Court held that 11 U.S.C. § 506(b) did not authorize postpetition interest on an oversecured prepetition claim that was nonconsensual in nature. However, the Supreme Court, in *U.S. v. Ron–Pair Enterprises,* has rejected this interpretation of Section 506. — U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Consequently, *In re Dan–Ver Enterprises* is no longer controlling.

In *U.S. v. Ron–Pair Enterprises,* the United States Supreme Court held that Section 506(b) entitles a creditor to receive postpetition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding. Thus, in accordance with *Ron–Pair Enterprises,* we hold that the Bank is entitled to accrued interest on the debtor's obligation under the bond both before and after the entry of the judgment and before and after the filing of the within Chapter 11 proceeding, but that the interest rate was changed to the legal rate of

6% per annum upon the entry of the judgment on June 16, 1986.

Although the parties did not address the interest issue with respect to the 1982 installment note in Count I, we must, to be consistent, apply the same rationale. There is clearly no language contained in the Note that manifests a clear intention to continue the contractual rate of interest after entry of the judgment. Thus, we must also find that the rate of interest was reduced to the legal rate after the entry of judgment.

■ Finally, the debtor contends that the Warrant's provisions regarding attorney fees is limited to reasonable attorney fees under § 506(b). The Warrant in the bond provided for "the costs of suit, [and] attorney's commission of 10 percent for collection …" In support of its position, the debtor supplies ample authority for the position that "a stipulation on a mortgage, bond, judgment, note or other obligation for the payment of attorney's fees incurred by the obligee in consequence of the default in payment or performance is regarded as in the nature of a penalty rather than liquidated damages … and will be enforceable only to the extent of compensating the plaintiff for the reasonable and necessary expenses of collection. *E.g., Daly v. Maitland,* 88 Pa. 384 (1879). Accordingly, a strict application and allowance of attorney fees based on the fixed percentage contained in the instruments will not be approved by this Court. *Id.. See also, Ron–Pair Enterprises,* 109 S.Ct. 1026, at 1027 (1989) ("Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available").

A hearing shall be scheduled to determine and fix the reasonable counsel fees and necessary expenses of collection, unless the parties can stipulate to a reasonable amount.

A separate order shall be issued in accordance with the foregoing.

### ORDER

In accordance with the findings of fact and conclusions of law contained in this Court's opinion dated March 24, 1989, it is hereby

ORDERED that Count I of the debtor's complaint seeking to avoid the May 11, 1982 judgment is dismissed; and it is

FURTHER ORDERED that the allowed amounts of the First Seneca Bank's secured claims shall be adjusted by computing interest at the legal rate of six per cent per annum from the dates of entry of the respective judgments. The parties shall compute the exact amounts in accordance with the foregoing and submit the same by stipulation to this court, and in the event the parties are unable to agree on the appropriate computations a further hearing will be scheduled;

A hearing shall be held to fix counsel fees allowable to First Seneca Bank at a time to be established by the court.